IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-HC-2132-D

| | |
|---|---|
| KENIS RAY JOHNSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| FRANK PERRY, | ) |
| | ) |
| Respondent. | ) |

Kenis Ray Johnson ("Johnson"), a state inmate, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [D.E. 1]. On January 24, 2014, the court reviewed the petition under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts and allowed the petition to proceed [D.E. 4], and the clerk served respondent with the petition [D.E. 5]. On March 3, 2014, respondent answered the petition [D.E. 6] and moved for summary judgment [D.E. 10]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Johnson about the motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 9]. On March 20, 2014, Johnson responded in opposition [D.E. 12]. As explained below, the court grants respondent's motion for summary judgment.

I.

Before addressing the merits of the petition, the court begins by briefly reciting the crime which led to Johnson's conviction and sentence. Johnson

> was arrested in a "buy-bust sting operation" conducted by the Onslow County Sheriff's Office. An informant, Joshua Burgess (Mr. Burgess), called Detective Vishaud Samlall (Detective Samlall) of the Onslow County Sheriff's Office on 17 July 2009 to inform Detective Samlall that he could set up a deal the following day to buy Vicodin pills from [Johnson]. Detective Samlall authorized the deal and the following morning, he met with Mr. Burgess and several officers of the Onslow

County Sheriff's Office, including Sergeant Robert Ides (Sergeant Ides). In preparation for the operation, the officers searched Mr. Burgess and his vehicle; the searches revealed no drugs or money. The officers then equipped Mr. Burgess with a "button camera[,]" a small camera made to look like a button and worn in place of a button on a person's clothing. Mr. Burgess was to use the button camera to record audio and video of the anticipated drug purchase. The officers also issued $350.00 of "buy money" to Mr. Burgess to purchase 180 Vicodin pills from [Johnson]. Detective Samlall had previously photocopied the $350.00 to make it identifiable.

The officers and Mr. Burgess drove to a grocery store parking lot in Swansboro, North Carolina, the site of the anticipated drug purchase. Mr. Burgess met [Johnson] in the grocery store parking lot and interacted with him for about a minute. Although several officers observed the interaction, no officers observed Mr. Burgess and [Johnson] exchange any money or drugs. Mr. Burgess testified that he purchased a bottle of pills from [Johnson] for $350.00, signaled to the officers that the deal was complete, and then drove away. After the officers observed Mr. Burgess signal that the deal was complete, the officers converged on [Johnson]'s vehicle and arrested [Johnson]. [Johnson]'s seven-year-old son was also in [Johnson]'s vehicle. Detective Samlall testified that he searched [Johnson]'s vehicle and found the $350.00 that had been issued to Mr. Burgess. Sergeant Ides testified that he followed Mr. Burgess and stopped him a short distance away from the parking lot. Sergeant Ides searched Mr. Burgess and his vehicle, locating a pill bottle containing 169.5 pills, but no additional drugs and no money. Sergeant Ides took possession of the pill bottle and the button camera worn by Mr. Burgess during the interaction.

Melanie Thornton (Ms. Thornton), a forensic chemist with the N.C. State Bureau of Investigation (SBI), testified that she analyzed and identified the pills "as a mixture of acetaminophen and Hydrocodone." Ms. Thornton also testified that the pills constituted "a Schedule III preparation of an opiate derivative, dihydrocodeinone, with a total weight of 118 grams." It is apparent from the record, and the parties agree, that Hydrocodone and dihydrocodeinone are synonymous.

[Johnson] testified that he received "180 pills every 30 days" for pain caused by his diabetes. During [Johnson]'s cross-examination, the State asked [Johnson] if he got "Vicodin or dihydrocodeinone from the VA" and [Johnson] responded "[t]hat is correct." [Johnson] testified that he and Mr. Burgess attended a cookout on 17 July 2009, where Mr. Burgess, aware of the pain [Johnson]'s diabetes caused [Johnson], offered to give [Johnson] several Percocet pills the following day. [Johnson] testified that he met Mr. Burgess in a grocery store parking lot on 18 July 2009, and that Mr. Burgess approached [Johnson]'s vehicle and dropped an empty pill bottle into [Johnson]'s lap, which [Johnson] immediately gave back to Mr. Burgess. [Johnson] denied ever selling any pills to Mr. Burgess and denied that the $350.00 "buy money" was ever in his possession or in his vehicle.

State v. Johnson, 214 N.C. App. 436, 437–38, 714 S.E.2d 502, 504–05 (2011).

On July 23, 2010, in Onslow County Superior Court, a jury convicted Johnson of selling and delivering, and possessing with intent to sell and deliver, a schedule III controlled substance, trafficking in opium, maintaining a vehicle for the purpose of selling controlled substances, and possession of drug paraphernalia. Johnson, 214 N.C. App. at 436–37, 714 S.E.2d at 504. The trial court sentenced Johnson to two consecutive terms of 225 to 279 months' imprisonment. Id., 714 S.E.2d at 504. Johnson appealed and, on August 16, 2011, the North Carolina Court of Appeals found no error. Id. at 447, 714 S.E.2d at 510. On November 9, 2011, the North Carolina Supreme Court denied Johnson's petition for discretionary review. State v. Johnson, 365 N.C. 362, 718 S.E.2d 393 (2011). On October 25, 2012, Johnson filed a motion for appropriate relief ("MAR") in Onslow County Superior Court. Pet. [D.E. 1] 6; [D.E. 8-9] (copy of MAR). On February 28, 2013, the state court denied the MAR. See [D.E. 8-10] (order denying MAR); [D.E. 1-2] 2–5 (same); cf. Pet. 6 (stating the court denied the MAR on March 8, 2013). On April 1, 2013,[1] Johnson filed a certiorari petition in the North Carolina Court of Appeals, which that court dismissed on April 17, 2013, based on Johnson's failure to attach a copy of his MAR. See [D.E. 8-11, 11-2]. On April 25, 2013, Johnson moved to reinstate his petition and attached a copy of his MAR. See [D.E. 11-3]. On May 14, 2013, the North Carolina Court of Appeals denied the petition. See [D.E. 11-5]; Pet. 7. On May 23, 2013, Johnson filed a certiorari petition in the North Carolina Supreme Court, which that court denied on August 27, 2013. [D.E. 11-6, 11-7].

---

[1] The state court apparently received Johnson's MAR on April 3, 2013, rather than April 1, 2013. See [D.E. 8-11] 2, 10. Giving Johnson the benefit of the prison mailbox rule, and construing the record in the light most favorable to Johnson, the court considers Johnson's certiorari petition as filed on April 1, 2013, the date he apparently signed it. See [D.E. 8-11] 10; Houston v. Lack, 487 U.S. 266, 275–76 (1988); Lewis v. Richmond City Police Dep't, 947 F.2d 733, 736 (4th Cir. 1991) (per curiam). Additionally, the court will use the prison mailbox rule in construing the filing date for Johnson's other pleadings.

On May 23, 2013, Johnson signed his section 2254 petition, and filed it in this court on June 3, 2013. Pet. 12. Johnson asserts two grounds for relief: (1) ineffective assistance of trial counsel during plea negotiations because he rejected the state's plea offer based on his lawyer's incorrect advice concerning the sentence he might receive if convicted at trial; and (2) ineffective assistance of trial counsel for failing to object to improper testimony of a law enforcement officer. Pet. 9; see Mem. Supp. Pet. [D.E. 1-1] 1.

II.

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

A federal court cannot grant habeas relief in cases where a state court considered a claim on its merits unless (1) the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) the state court decision was based on an unreasonable determination of the facts in light of the

4

evidence presented in state court. 28 U.S.C. § 2254(d). A state court decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to the Supreme Court's result. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see Lopez v. Smith, ___ S. Ct. ___, 2014 WL 4956764, at *1 (U.S. Oct. 6, 2014) (per curiam); White v. Woodall, 134 S. Ct. 1697, 1702–07 (2014); Nevada v. Jackson, 133 S. Ct. 1990, 1992 (2013) (per curiam); Metrish v. Lancaster, 133 S. Ct. 1781, 1786–92 (2013); Marshall v. Rodgers, 133 S. Ct. 1446, 1450–51 (2013) (per curiam); Parker v. Matthews, 132 S. Ct. 2148, 2151–56 (2012) (per curiam); Hardy v. Cross, 132 S. Ct. 490, 493–95 (2011) (per curiam); Bobby v. Dixon, 132 S. Ct. 26, 29–32 (2011) (per curiam); Cavazos v. Smith, 132 S. Ct. 2, 4–8 (2011) (per curiam); Renico v. Lett, 559 U.S. 766, 773 (2010).

> [Section 2254(d)] does not require that a state court cite to federal law in order for a federal court to determine whether the state court decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000) (en banc). Moreover, a state court's factual determination is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010).

Congress intended the standard in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") to be difficult to meet. See White, 134 S. Ct. at 1702; Harrington v. Richter, 131 S. Ct.

5

770, 786 (2011). "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington, 131 S. Ct. at 787. To prevail in an action brought under section 2254(d), a petitioner must show that "there was no reasonable basis for the state court to deny relief." Id. at 784; see DeCastro v. Branker, 642 F.3d 442, 449 (4th Cir. 2011).

Johnson asserts that he was deprived of his Sixth Amendment right to counsel. "The Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (quotation omitted); see Strickland v. Washington, 466 U.S. 668, 687–91 (1984).

A petitioner alleging ineffective assistance of counsel must demonstrate that counsel's representation fell below an objective standard of reasonableness and that counsel's deficient performance caused the individual prejudice. See Strickland, 466 U.S. at 687; see also Missouri v. Frye, 132 S. Ct. 1399, 1409–10 (2012); Lafler v. Cooper, 132 S. Ct. 1376, 1384–86 (2012); Hill v. Lockhart, 474 U.S. 52, 57–59 (1985); Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (en banc). When determining whether counsel's representation was objectively unreasonable, the court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. A party also must show that counsel's deficient performance prejudiced the party. See id. at 687. A party does so by showing that there is a "reasonable probability" that, but for the deficiency, "the result of the proceeding would have been different." Id. at 694.

6

First, the court addresses Johnson's assertion that his trial counsel was ineffective for failing to object to testimony by a state law enforcement witness characterizing Burgess as more credible than Johnson and characterizing Johnson as a drug dealer who posed a threat. Johnson raised this claim on direct appeal, and the North Carolina Court of Appeals rejected it on the merits:

> In the present case, [Johnson] argues that he received ineffective assistance of counsel at trial for two reasons. First, [Johnson] argues that his trial counsel "neglect[ed] to object to and join[ed] in repeated characterizations of the police informant as a 'confidential and reliable informant' or 'CRI[.]' " [Johnson] reasons that because no "police officer witnessed an exchange of money for pills[,]" the "question for the jury was whether to believe the testimony of [Mr.] Burgess asserting or the testimony of [Johnson] denying such exchange." [Johnson] concludes that to "determine whether the State met its burden of proof, the jury had to decide whether or not [Mr.] Burgess was reliable." We disagree.
>
> Assuming, arguendo, that [Johnson] has presented a situation where defense counsel "'made errors so serious that counsel was not functioning as the "counsel" guaranteed'" by the federal and state constitutions, id. at 562, 324 S.E.2d at 248 (citation omitted), [Johnson] has failed to show prejudice from the alleged errors. [Johnson]'s argument presumes that the State could not meet its burden of proof without proving that Mr. Burgess was a more credible witness than [Johnson]. However, [Johnson]'s argument fails to take account of the fact that the jury also viewed a recording of the interaction between [Johnson] and Mr. Burgess. As stated by the trial court, that recording featured "certain items, such as the money and the pill bottle [,]" which, alongside the testimony of State's witnesses other than Mr. Burgess, would have allowed the State to meet its burden of proof regarding [Johnson]'s guilt. Accordingly, [Johnson] has failed to show that these alleged errors " 'were so serious as to deprive . . . [Johnson] of a fair trial[.]'" Id. (citation omitted).
>
> [Johnson] also argues that he received ineffective assistance of counsel because his trial counsel failed to object to "hearsay and non-expert opinion" that characterized Mr. Burgess as a prescription medication addict who was not a potential threat to other people but characterized [Johnson] as a drug dealer who posed a greater threat to other people. We note that, as stated by [Johnson], there was no objection to the alleged "hearsay and non-expert opinion" testimony at trial. [Johnson] does not argue that the testimony at issue fails the plain error standard. Accordingly, we make no determination as to whether the admission into evidence of the testimony at issue was in error.
>
> Assuming, arguendo, that defense counsel's failure to object to the "hearsay and non-expert opinion" testimony at issue presents a situation where defense counsel "'made errors so serious that counsel was not functioning as the "counsel"

7

guaranteed'" by the federal and state constitutions, id. at 562, 324 S.E.2d at 248 (citation omitted), [Johnson] has failed to show prejudice from the alleged error. In his brief, [Johnson] argues why defense counsel should have objected to the testimony at issue, under the applicable evidentiary rule, and then simply asserts: "Trial counsel's failure to object prejudiced fair determination whether to believe [Mr.] Burgess'[] testimony or [Johnson's] testimony." Like [Johnson]'s first argument regarding ineffective assistance, this argument fails to take into account the probative value of the recording which depicted the interaction between Mr. Burgess and [Johnson]. We also note that, despite [Johnson]'s arguments that his trial counsel's alleged errors bolstered Mr. Burgess' credibility with the jury, [Johnson]'s trial counsel repeatedly attacked Mr. Burgess' credibility throughout the trial. Because the State could meet its burden of proof regardless of the credibility of Mr. Burgess' testimony, [Johnson] has failed to show prejudice in this matter. [Johnson]'s argument is without merit.

Johnson, 214 N.C. App. at 446–47, 714 S.E.2d at 509–10.

Assuming without deciding that this claim is not procedurally barred due to Johnson's failure to raise the claim in his MAR, Johnson has not shown that the North Carolina Court of Appeals' ruling on this issue reached a result contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts. See, e.g., Strickland, 466 U.S. at 687–91; Abernathy v. Hobbs, 748 F.3d 813, 817 (8th Cir. 2014) (collecting cases); Hodge v. Haeberlin, 579 F.3d 627, 641–42 (6th Cir. 2009). Thus, the court dismisses the claim.

As for Johnson's assertion that he was deprived of his Sixth Amendment right to effective assistance of counsel because trial counsel allegedly failed to properly advise him during plea negotiations, Johnson bases this claim on advice from his attorney that his attorney "had reviewed the video-tape of the incident that resulted in [Johnson]'s arrest, and stated emphatically to [Johnson] that the video-tape did not conclusively show what transpired" during the drug deal. See [D.E. 8-9] 4. The North Carolina Superior Court rejected this argument in Johnson's MAR on the merits:

> A review of the court file finds the video was made available to [Johnson] and his attorney on June 29, 2010, three weeks prior to trial. The court file shows a

8

hearing was held concerning [Johnson]'s requesting a copy of that video in preparation for trial. The hearing transcript indicates the video was provided that day to [Johnson] and his attorney at the Onslow County Sheriff's Department. The hearing transcript further indicates that after [Johnson] and his attorney viewed the video, the court then ordered that a copy of the video be provided to [Johnson]'s attorney in preparation of trial. Both [Johnson] and his attorney also had the ability to view the video using the Onslow County Sheriff's Department equipment. At that time the defendant and his attorney were provided a laptop computer to view the video and were left in a room by themselves to view the tape and discuss privately the contents of the recording. [Johnson] had the ability then to view the video however he wanted, either slowed down, regular speed, or at a faster speed. [Johnson] also watched the video as many times as he wanted with his attorney. [Johnson] had the ability to discuss the contents of the video with his attorney while watching the video and was personally aware of what would be depicted on the video. [Johnson] never denied he was depicted in the video so he must have known what should have been contained within the tape. [Johnson] has failed to show that his attorney's performance in the trial of his case was deficient. [Johnson]'s argument on this issue is denied.

[Johnson] has also alleged that his attorney never fully explained the amount of potential active prison time the defendant was facing if convicted at trial. [Johnson] claims his attorney told him he was only facing a maximum of 225 months minimum to 279 months maximum. Further, [Johnson] claims had he been fully advised of the maximum possible punishment of 558 months, he would have accepted the State's plea offer of 70 months minimum to 84 months maximum.

A review of the court file indicates [Johnson] was advised by the trial court on April 27, 2010 of the State's plea offer, almost three months prior to trial. [Johnson] was offered the opportunity to plead guilty to one count of Trafficking in Opium level I and receive an active sentence of a minimum of 70 months and a maximum of 84 months with the remaining charges dismissed. During the April hearing [Johnson] was present in court and was represented by attorney Stuart Popkin. [Johnson] rejected the state's plea offer and a trial date was set for May 17, 2010. The court inquired about any lab issues and was advised by [Johnson]'s attorney that there were no lab issues and ordered [Johnson] to remain in the Onslow County Jail. Prior to the case going to trial, [Johnson] retained a new attorney, Robert Lewis. The State's plea offer was extended to Mr. Lewis once he was retained. It was not accepted, and on July 22, 2010 [Johnson] was convicted by a jury of three counts of Level 3 Trafficking in Opium and other related felony offenses.

[Johnson] has cited *Lafler v. Cooper*, 132 S. Ct. 1376 (2012) in arguing that his attorney was ineffective in advising [Johnson] to reject the plea offer. [Johnson] has claimed Mr. Lewis was ineffective for not advising [Johnson] of the maximum punishment he faced and for not advising him of the contents of the State's video

9

evidence. Under *Lafler*, "[I]n these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.* that [Johnson] would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that were in fact imposed." *Id.* at 1385. Further, the North Carolina Courts have looked at when a plea agreement between the State and a defendant will be accepted and enforced. In *State v. Tony Johnson*, 126 N.C. App. 271 (1997), the Court of Appeals recognized that ". . . according to N.C. Gen. Stat. § 15A-1023(b), a plea agreement involving a recommended sentence must first be approved by the presiding trial judge before it can become effective." *Id.* at 274. "It is well established in this State that a lack of judicial approval renders a proposed plea agreement 'null and void'." *Id.* at 274 citing *State v. Collins*, 300 N.C. 142, 265 S.E.2d. 172, 176 (1980). "The Supreme Court cited *Collins* and stated that 'a plea agreement involving a sentence recommendation by the State must first have judicial approval pursuant to N.C. Gen. Stat. § 15A-1023(b) before it is enforceable." *Id.* at 275 citing *State v. Marlow*, 334 N.C. 273, 280-281, 432 S.E.2d. 275, 276 (1993).

In reviewing [Johnson]'s Motion, [Johnson] has failed to demonstrate that the plea offer extended by the State was ever accepted by the court. [Johnson] appeared in open court on April 27, 2010 and rejected a plea offer made by the State. A review of the rejection hearing transcript shows the court asked what the plea offer was and whether [Johnson] accepted the offer and what the trial date would be for this case. However, the trial court never indicated it would accept the plea offer that was tendered by the State to [Johnson]. The plea offer called for a recommendation to a particular sentence that pursuant to N.C.G.S. 15A-1023(b) the trial court must advise the parties whether he approves of the arrangement and will dispose of the case accordingly. In this case, the record is clear that the court never indicated it would accept the State's offer. As such, under *State v. Johnson*, the agreement would not be enforceable and does not meet all the requirements under *Lafler* to demonstrate that his counsel was ineffective in not advising [Johnson] to accept the plea offer.

Further, [Johnson]'s motion indicates he was advised that he faced a substantial amount of active time if he rejected the State's offer. [Johnson] was advised that he faced, at least, three times the amount of time if he took the matter to trial and he were convicted. [Johnson] also reviewed the very evidence that he claims his attorney did not fully review in evaluating the State's plea offer. [Johnson] reviewed the video on June 29, 2010 with his attorney and then had a copy provided to the defense to review at later times. [Johnson] observed what was on the video for himself and did not have to rely solely on what Mr. Lewis told him. [Johnson] had the ability to play the video as many times as he wished and at what ever speed he wanted. After reviewing this evidence and reviewing all the police reports provided in discovery to [Johnson], [Johnson] made a knowing, intelligent and voluntary choice to reject the State's plea offer. [Johnson] has failed to

10

demonstrate that but for the advice of counsel he would have accepted the State's plea offer. [Johnson]'s argument on this issue is denied.

[D.E. 8-10] 3–5.

The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including the plea bargaining process. See, e.g., Frye, 132 S. Ct. at 1405; Lafler, 132 S. Ct. at 1387; Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir.), cert. denied, 134 S. Ct. 71 (2013). Moreover, "sentencing is a critical stage of trial at which a defendant is entitled to effective assistance of counsel, and a sentence imposed without effective assistance must be vacated and reimposed to permit facts in mitigation of punishment to be fully and freely developed." United States v. Breckenridge, 93 F.3d 132, 135 (4th Cir. 1996); cf. Glover v. United States, 531 U.S. 198, 203–04 (2001). However, nothing in the holdings of "*Lafler and Frye* . . . require[s] subsequent counsel to press a plea offer on a defendant who has already rejected any such offer—nor is it per se prejudice for failing to do so[.]" Groves v. United States, 755 F.3d 588, 592 (7th Cir. 2014).

Both parties cite Lafler and Frye. Compare Resp't's Mem. Supp. Mot. Summ. J. [D.E. 8] 7, with Pet'r's Resp. Opp'n Mot. Summ. J. [D.E. 12] 2. In Lafler, the Supreme Court held that "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." 132 S. Ct. at 1387. However, in order to succeed on this claim, Johnson

> must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

Lafler, 132 S. Ct. at 1385; see Frye, 132 S. Ct. at 1409; Merzbacher, 706 F.3d at 366; Osley v.

11

United States, 751 F.3d 1214, 1222 (11th Cir. 2014).

Johnson has not shown that the state court's ruling on this issue reached a result contrary to, or involved an unreasonable application of, clearly established federal law. See, e.g., Merzbacher, 706 F.3d at 368; Barnes v. Hammer, 765 F.3d 810, 814 (8th Cir. 2014); Osley, 751 F.3d at 1223–24; cf. Lafler, 132 S. Ct. at 1383, 1390–91 (noting that all parties conceded deficiency of counsel's advice). Thus, the court dismisses the claim.

II.

In sum, the court GRANTS respondent's motion for summary judgment [D.E. 10], and DISMISSES Johnson's application for a writ of habeas corpus [D.E. 1]. The court also DENIES a certificate of appealability. See 28 U.S.C. § 2253(c). The clerk shall close this case.

SO ORDERED. This 7 day of November 2014.

JAMES C. DEVER III
Chief United States District Judge